

FILED
CLERK, U.S. DISTRICT COURT
11/29/2018
CENTRAL DISTRICT OF CALIFORNIA
BY: CW DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULGENCIO S., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 8:18-cv-00318-MAA <br><br> **MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Fulgencio S.[1] ("Plaintiff") seeks review of the final decision of the Acting Commissioner of Social Security ("Defendant," "Commissioner," or "Administration") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Judge. (ECF Nos. 10, 12-13.) For the reasons stated below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

I. **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On April 3, 2015, Plaintiff filed applications for DIB and SSI. (Administrative Record ("AR") 192-204.) In both applications, Plaintiff alleged disability beginning on October 8, 2014. (*Id.*; *see also* AR 76-82, 84-91.) The Administration denied the SSI application initially on May 22, 2015 (AR 116-19), and it denied the DIB application initially on June 1, 2015 (AR 120-23). The Administration denied the applications upon reconsideration on October 27, 2015. (AR 128-33.) Plaintiff requested a hearing on November 19, 2015. (AR 134-35.) Administrative Law Judge Salena Bowman-Davis ("ALJ") held a hearing on June 28, 2017. (AR 44-75.)

The ALJ issued a partially favorable ruling on July 24, 2017. (AR 12-33.) To reach this conclusion, the ALJ applied the five-step sequential evaluation process for determining whether an individual is disabled. (AR 17-18.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 8, 2014. (*See* AR 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: "cardiomyopathy; epilepsy; cerebral aneurysm; obesity; chronic kidney disease; and a seizure disorder." (*Id.*)

At step three, the ALJ's analysis diverged based on a critical date, September 15, 2016, when the medical records indicate Plaintiff began hemodialysis. (*See* AR 26 (citing AR 940).) Before September 15, 2016, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment at step three. (AR 19-20.) The ALJ determined that Plaintiff had the residual functional capacity to perform a reduced range of sedentary work before September 15, 2016. (*See* AR 20-21 (detailing residual

2

functional capacity).) At step four, the ALJ concluded that Plaintiff was unable to perform past relevant work as a meat clerk and warehouse worker before September 15, 2016. (AR 24.) At step five, the ALJ determined that Plaintiff could perform other work in the national economy before September 15, 2016, specifically the occupations of assembler, table worker, and document preparer, all of which are sedentary, unskilled occupations. (*See* AR 24-25.) Accordingly, the ALJ concluded that before September 15, 2016, Plaintiff was not disabled as defined by the Social Security Act. (AR 26.)

Beginning on September 15, 2016, however, the ALJ determined at step three that the severity of Plaintiff's impairments met the criteria of section 6.03 of 20 C.F.R. part 404, subpart P, appendix 1. (AR 25-26.) Consequently, she found Plaintiff to be disabled beginning September 15, 2016. (AR 26.)

Plaintiff requested review with the Appeals Council on July 31, 2017. (AR 189-91). The Appeals Council denied the request on January 19, 2018. (AR 1-6.) The Appeals Council cast the ALJ's decision of July 24, 2017 as the final decision of the Commissioner. (*Id.*)

## II. **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts

3

from the Commissioner's conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation and quotation marks omitted).

III. **DISCUSSION**

The parties identify three disputed issues:

1. Whether the ALJ's finding that Plaintiff became disabled only as of September 15, 2016 is supported by substantial evidence.
2. Whether the ALJ failed to properly assess Plaintiff's testimony regarding his pain and limitations.
3. Whether the ALJ failed to properly consider the reporting of Dr. Harpeet Singh.

For the reasons stated below, reversal and remand for further administrative proceedings are warranted for Issue One. Because remand is warranted for Issue One, the Court declines to address Issues Two and Three. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

A. **Legal Standard**

Decisions of the Commissioner follow a five-step sequential evaluation process. *See generally* 20 C.F.R. §§ 404.1520, 416.920. At step three, the ALJ evaluates whether a claimant's impairments meet or equal an impairment listed in

4

20 C.F.R. part 404, subpart P, appendix 1 ("Listing"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The impairments must have lasted or be expected to last for a continuous period of at least twelve months. *See id.* §§ 404.1525(c)(4), 416.925(c)(4). If a claimant meets or medically equals a Listing, the claimant is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471 (1986). An impairment or combination of impairments that "manifests only some of th[e] criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

A claimant bears the burden of demonstrating that his or her impairments meet a Listing and that the twelve-month duration requirement is satisfied. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet a Listing, the claimant must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (quoting *Zebley*, 493 U.S. at 531).

Nevertheless, an ALJ must evaluate and discuss the evidence adequately before concluding that a claimant's impairments fail to meet or equal a Listing. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."); *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) ("In determining whether a claimant equals a listing under step three . . . , the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the listed impairments.").

**B.      Background**

At the hearing before the ALJ, counsel for Plaintiff specifically requested that the ALJ consider whether Plaintiff's impairments met Listing 4.02. (AR 68-69.)
///

5

An impairment or combination of impairments meets Listing 4.02 "when the requirements in both A and B are satisfied":

    A.    Medically documented presence of one of the following:

        1.    Systolic failure . . . , with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

        2.    Diastolic failure . . . , with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

    B.    Resulting in one of the following:

        1.    Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom [a medical consultant], preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

///

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period . . . , with evidence of fluid retention . . . from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization . . . ; or
3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
   a. Dyspnea, fatigue, palpitations, or chest discomfort; or
   b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
   c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise . . . due to left ventricular dysfunction, despite an increase in workload; or

d.    Signs attributable to inadequate
                          cerebral perfusion, such as ataxic gait
                          or mental confusion.
20 C.F.R. pt. 404, subpt. P, app. 1 § 4.02.

Plaintiff's counsel noted at the hearing that Plaintiff's recorded ejection fractions were at or near the level required to meet criterion 1 of paragraph A. (*See* AR 73.)

Plaintiff's consistently low left ventricle ejection fraction is well-documented in his medical records. For example, as Plaintiff identifies (ECF No. 20, at 2), his ejection fraction was documented as 32% on January 25, 2014 (AR 530); 25-30% on January 28, 2014 (*see* AR 328); either 29.48% or 47.4% on April 28, 2015 (*see* AR 944-45 (showing different ejection fractions based on measurement method)); 20% on July 22, 2015 (AR 669); 30-35% on July 25, 2015 (AR 683); 30% on July 27, 2015 (AR 702); 30% on November 23, 2015 (AR 1016); 30% on February 2, 2016 (AR 1022); 30% on March 3, 2016 (AR 1025); 30-35% on March 10, 2016 (AR 901-02, 930-31); 30-35% on March 15, 2016 (AR 1028); 30% on April 7, 2016 (AR 1031); 30-35% on May 4, 2016 (AR 1034); 30% on July 7, 2016 (AR 1037); 30-35% on September 21, 2016 (AR 1040); 30-35% on September 29, 2016 (AR 1043); and 30-35% on October 11, 2016 (AR 1046). Although the list of ejection fractions Plaintiff provides is non-exhaustive, Plaintiff's curated sample is fairly representative of the population of measurements in the medical records, which generally indicate an "abnormal" ejection fraction. (AR 947; *e.g.*, AR 355 (57% on October 6, 2014), 485 (25% in July 2014), 549 (35-40% on January 25, 2014), 947 (40% on April 30, 2015), 965 (30-35% on October 7, 2016), 993 (30-35% on September 14, 2016), 1013 (30% on September 2, 2015), 1019 (30% on December 28, 2015), 1049 (30-35% on November 10, 2016), 1052 (30-35% on December 6, 2016), 1055 (20% on January 4, 2017), 1065 (20% on February 9, 2017), 1067 (20% on March 22, 2017), 1070 (20% on March 27, 2017).)

With respect to Listing 4.02, the ALJ's decision states in full:

> Under listing 4.02, entitled chronic heart failure, the claimant must demonstrate a required systolic or diastolic failure resulting in persistent symptoms of heart failure. There is no evidence in the record which demonstrates this [sic] criteria prior to September 15, 2016.

(AR 19.)

The ALJ decision discusses only three of the ejection fractions recorded before the critical date of September 15, 2016. Notably, the ALJ highlights only ejection fractions recorded above the Listing level during that period. (*See* AR 22 (citing ejection fraction of 32% recorded on February 6, 2014 (AR 533); ejection fraction of 47.4% recorded on April 28, 2015 (AR 944); and ejection fraction of 40% recorded on April 30, 2015 (AR 947)); *but see* AR 26 (citing ejection fraction of 20% recorded on February 9, 2017, after the critical date (AR 1065)).)

Plaintiff contends that the ALJ erred by determining that Plaintiff did not meet Listing 4.02 prior to September 15, 2016. (ECF No. 20, at 3 (citing AR 19).) Plaintiff argues that the ALJ's statement that "no evidence in the record" demonstrates the Listing 4.02 criteria ignores evidence in the record meeting a paragraph A criterion of the Listing. (*See id.*) Plaintiff also suggests that the ALJ failed to explain her reasoning adequately and that the ALJ should have called a medical expert. (*See id.* At 2-4.) Defendant, apparently conceding that Plaintiff's medical records contain evidence fulfilling criterion 1 of paragraph A, offers that Plaintiff has identified neither record evidence demonstrating he meets any of the paragraph B criteria, nor any plausible theory by which evidence of a low ejection fraction, combined with evidence of other impairments, may meet or equal a Listing. (*See id.* at 7-8.)

///

///

C.  **Analysis**

In evaluating whether Plaintiff's impairments met or medically equaled Listing 4.02 at step three, the ALJ committed two errors. First, the ALJ's statement that "no evidence" supports the Listing 4.02 criteria is not supported by substantial evidence. Second, the ALJ's boilerplate, summary evaluation of Listing 4.02 does not sufficiently explain reasoning supporting her dismissal of the Listing.

*First*, the ALJ's determination that "no evidence in the record" demonstrates the Listing 4.02 criteria is directly contradicted by evidence of Listing-level ejection fraction observations before September 15, 2016. Plaintiff's medical records contain a plethora of recorded ejection fractions meeting the "30 percent or less" requirement of criterion 1 of paragraph A. (*E.g.*, AR 328, 485, 669, 683; 702, 901-02, 930-31, 944-45, 965, 993, 1013, 1016, 1019, 1022, 1025, 1028, 1031, 1034, 1037, 1040, 1043, 1046, 1049, 1052, 1055, 1065, 1067, 1070.) *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.02(A)(1). These ejection fractions were observed over several years (including within the period of alleged disability in dispute, October 8, 2014 through September 14, 2016), fulfilling the twelve-month duration requirement. *But see Frank v. Colvin*, No. 6:14-cv-01434-AC, 2015 U.S. Dist. LEXIS 141675, at *7-8, 2015 WL 6150852, at *3 (D. Or. Oct. 19, 2015) (rejecting argument that Listing 4.02 ejection fraction requirement must be sustained for twelve-month period and concluding that the Listing "could presumably be met in less than 12 months"). The ALJ's selective citation of ejection fractions recorded above the Listing level impermissibly cherry-picks parts of the record favorable to the ALJ's conclusions without engaging with controverting evidence. *See Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) ("The ALJ was not permitted to 'cherry pick' from those mixed results to support a denial of benefits." (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011))). Because there is evidence in the record showing Plaintiff may have met criterion 1 of paragraph A of Listing 4.02, the ALJ's

///

determination that there is "no evidence in the record" demonstrating Listing 4.02 criteria is not supported by substantial evidence. *See Lingenfelter*, 504 F.3d at 1035.

*Second*, an ALJ's failure to make specific findings concerning whether a claimant has met a Listing criterion is reversible error. *See, e.g., Lewis*, 236 F.3d at 512; *Martinez v. Berryhill*, No. CV 17-3744-E, 2018 U.S. Dist. LEXIS 69806, at *9, 2018 WL 1989515, at *4 (C.D. Cal. Apr. 25, 2018); *cf. Treichler*, 775 F.3d at 1102 ("Because the 'grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based,' [*SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)], the agency must explain its reasoning.").

Here, the ALJ neglects to detail her analysis regarding the requirements of Listing 4.02. As an illustration, the ALJ improperly characterizes the paragraph B criteria when summarizing Listing 4.02 as "systolic or diastolic failure *resulting in persistent symptoms of heart failure*." (AR 19 (emphasis added).) The ALJ's statement tracks the beginning of criterion 1 of paragraph B. 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.02(B)(1) ("Persistent symptoms of heart failure . . . ."). But the statement misreads the criterion itself, which requires those symptoms to cause a medical consultant to conclude that "performance of an exercise test would present a significant risk to the individual." *Id.* Nowhere does the ALJ's analysis state this to be the case. (*See* AR 19.) Moreover, "persistent symptoms of heart failure" does not adequately characterize the requirements of criteria 2 and 3 of paragraph B, which regard episodes of acute congestive heart failure and inability to perform to a certain standard on an exercise tolerance test. 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.02(B)(2)-(3). Therefore, it is impossible to tell whether, by stating that "no evidence in the record . . . demonstrates" "persistent symptoms of heart failure" (AR 19), the ALJ adequately considered if Plaintiff's signs of heart failure met any of the paragraph B criteria. Because the ALJ concludes without explanation that "no evidence in the record . . . demonstrates this [sic] criteria," this Court cannot conduct an adequate review of the ALJ's reasoning.

Likewise, the written decision does not articulate that the ALJ properly considered the paragraph A criteria. As detailed above, the ALJ erred by ignoring evidence of Listing-level ejection fractions in Plaintiff's medical records. Even assuming the ALJ considered the Listing-level ejection fraction measurements in Plaintiff's medical records, the ALJ's analysis and dismissal of those measurements is absent from her discussion of the Listing, depriving this Court of meaningful review. Moreover, the ALJ neglects to mention, let alone evaluate, other means by which Plaintiff could have met a paragraph A criterion, such as "left ventricular end diastolic dimensions greater than 6.0 cm." 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.02(A)(1). (*See, e.g.*, AR 945 (showing LVIDd measurement of 6.44 cm on April 28, 2015).)

Factual findings outside of the Listing evaluation section of an ALJ decision may offer reasoning supporting a Listing evaluation. *See, e.g., Browning v. Astrue*, No. CV-09-8094-PCT-GMS, 2010 U.S. Dist. LEXIS 43888, at *13, 2010 WL 1511667, at *5 (D. Ariz. Apr. 15, 2010) (finding ALJ's summary determination that claimant had not met Listing 4.02 was supported by different section of the ALJ decision adequately explaining the determination). Here, the Court declines to infer that the ALJ's reasoning supporting her determination of Plaintiff's residual functional capacity applies to her Listing evaluation. For example, the ALJ decision cites Plaintiff's walking and jogging activities (AR 23), which Defendant asserts are "activities patently inconsistent with disabling chronic heart failure" (ECF No. 20, at 7-8). Though Plaintiff's activities suggest he could not have met criterion 1 of paragraph B, they are not probative of the other two paragraph B criteria, nor are they probative of the paragraph A criteria. The ALJ's residual functional capacity discussion—and the Commissioner's *post hoc* characterization of its reasoning—cannot remedy the ALJ's error.

The ALJ's boilerplate statement that "there is no evidence in the record which demonstrates [Listing 4.02] criteria prior to September 15, 2016" (AR 19) is

insufficient to discharge her obligation to show the reasoning behind her determination. The ALJ's failure to explain her conclusion is error.

Given these two errors, the Court cannot conclude confidently that the ALJ's errors were harmless. "[W]here harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). However, Ninth Circuit precedents "have been cautious about when harmless error should be found." *Marsh*, 792 F.3d at 1173; *see also, e.g., Molina*, 674 F.3d at 1115-17 (reviewing the Ninth Circuit's harmless error principles in the Social Security context).

Defendant argues that Plaintiff has not offered any medical evidence demonstrating that he met any of the three criteria in paragraph B of Listing 4.02. (*See* ECF No. 20, at 7-8.) Plaintiff must meet one of the three criteria to prevail on a Listing 4.02 determination. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.02 ("The required level of severity for this impairment is met when the requirements in *both A and B* are satisfied."). Plaintiff does not offer, and the Court's independent review of the record has not uncovered, medical records showing that Plaintiff met one of the three required criteria in paragraph B. (*See* ECF No. 20, at 8-13.)

Despite this, the Court cannot infer that Plaintiff could not have met any of the three paragraph B criteria prior to September 15, 2016. *Cf. McMahon v. Berryhill*, 713 F. App'x 693 (9th Cir. 2018) (finding ALJ's boilerplate Listing analysis harmless error given evidence showing claimant could not meet a required element of a Listing), *aff'g McMahon v. Colvin*, No. 1:15-cv-00043-SMS, 2016 U.S. Dist. LEXIS 145740, 2016 WL 6135864 (E.D. Cal. Oct. 20, 2016). It is the domain of the ALJ, not this Court, to evaluate whether Plaintiff met a paragraph B criterion. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). And, as Plaintiff suggests, it is the ALJ's duty to order a further medical evaluation should the ALJ determine that evidence potentially demonstrating Plaintiff met any of the paragraph B criteria is ambiguous or inadequate. (*See* ECF No. 20, at 4, 12.) *See also Tonapetyan v.*

13

*Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (outlining ALJ's duty to develop the record where evidence is ambiguous or inadequate). But without the ALJ's affirmative determination that the record is sufficient and that Plaintiff did not meet any of the paragraph B criterion, the Court cannot conclude definitively that the ALJ's errors were harmless.

Upon remand, the ALJ ultimately may reject Plaintiff's contention that he met Listing 4.02 before September 15, 2016. But until then, it is clear that the ALJ failed to evaluate in the first instance and with requisite specificity whether Plaintiff met any of the paragraph B criteria. (*See* AR 19.) The Court will not make specific factual findings regarding the paragraph B criteria, which is a responsibility reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Accordingly, the Court cannot conclude the ALJ's failure to explain the Listing 4.02 evaluation was harmless error. *Cf. Wobbe v. Colvin*, No. 6:12-CV-00512-AC, 2013 U.S. Dist. LEXIS 111325, at *12-15 (D. Or. July 2, 2013) (upholding ALJ decision where ALJ specifically addressed and affirmatively found that claimant's impairments did not meet or medically equal Listing 4.02 paragraph B criteria), *recommendation adopted*, 2013 U.S. Dist. LEXIS 110195, 2013 WL 4026820 (D. Or. Aug. 6, 2013).

### D. Remedy

If a reviewing court determines the agency erred in reaching a decision to deny benefits and that the error was not harmless, "sentence four of § 405(g) authorizes the court to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" *Treichler*, 775 F.3d at 1099 (alteration in original) (quoting 42 U.S.C. § 405(g)). Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). When "the record before the agency does not

support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (ellipses in original) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

Alternatively, the Court may reverse the Commissioner's decision with instructions to calculate and award benefits when "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020; *see also Dominguez*, 808 F.3d at 407-08. Even if the three prongs of this "credit-as-true rule" are met, however, directing the Commissioner to award benefits is inappropriate if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Although the Court has found that the ALJ committed reversible error, the Court is "not satisfied that further administrative proceedings would serve no useful purpose." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (citation and quotation marks omitted). The Court cannot evaluate adequately the ALJ's reasoning supporting her finding that Plaintiff did not meet Listing 4.02 before September 15, 2016. Therefore, remand is appropriate. *See, e.g., Martinez*, 2018 U.S. Dist. LEXIS 69806, at *19, 2018 WL 1989515, at *7 (electing to remand given step-three errors because "the Court does not believe that it should weigh the persuasiveness of the conflicting evidence and make findings of fact on issues reserved to the Commissioner"); *Moreno v. Berryhill*, No. CV 16-9145-KK, 2017 U.S. Dist. LEXIS 150366, at *23, 2017 WL 4119064, at *9 (C.D. Cal. Sept. 14,

15

2017) (electing to remand on ALJ's failure to consider whether claimant met Listing criterion).

Based on its review and consideration of the entire record, the Court concludes that a remand on an open record for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted. The Court does not intend to limit the scope of the remand.

## IV. CONCLUSION

The Court ORDERS that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: Nov. 29, 2018

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE